

**ORDERED in the Southern District of Florida on February 2, 2016.**

Paul G. Hyman, Jr.
**Chief United States Bankruptcy Judge**

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

In re:                                           Case No.: 14-19551-BKC-PGH

Lori Stickle,                                    Chapter 13
f/k/a Lori Ann Utz,

      Debtor.

_____/

### MEMORANDUM OF LAW
### ON DEBTOR'S MOTION FOR PROTECTIVE ORDER

**THIS MATTER** came before the Court on December 18, 2015, upon the

*Motion for Protective Order Barring Untimely Rule 2004 Examination by Creditor*

(ECF No. 60) (the "Motion for Protective Order") filed by Lori Stickle (the "Debtor"),

seeking to bar the *Notice of Rule 2004 Examination Duces Tecum* (the "Notice of

Rule 2004 Examination") (ECF No. 57) filed by Paula Wasik Catalanotti, the Joseph

Wasik and Paula Wasik Catalanotti Trust, and the Wasik Family Trust (the

"Creditors"). The Debtor, through the Motion for Protective Order, seeks protection from producing a client questionnaire filled out by the Debtor for her attorney on the basis of attorney-client privilege or work-product doctrine. The purpose of this Order is to provide the parties guidance as to whether the attorney-client privilege or work-product doctrine shields from discovery a client questionnaire, work sheets, or any other notes that were completed by a debtor and given to her attorney to facilitate the completion of the Debtor's bankruptcy petition and schedules.

## FACTUAL AND PROCEDURAL HISTORY

The Creditors are comprised of two family trusts (the "Trusts") and Paula Wasik Catalanotti ("Ms. Catalanotti"), who is the beneficiary of the Trusts. In 2000, the Debtor was appointed as trustee for the Trusts. As trustee, the Debtor was responsible for managing real property owned by the Trusts located in Brooklyn, New York (the "Property"). The Debtor's responsibilities included without limitation: maintaining the Property, collecting rents, and paying expenses.

According to the Creditors, the Debtor breached her fiduciary duties to the Creditors by allowing the Property to fall into disrepair. Additionally, the Creditors allege that the Debtor failed to properly rent the Property at market rates, failed to collect rents from tenants, and failed to pay bills in a timely manner. After years of alleged neglect, the Creditors claim that in 2013, Ms. Catalanotti made an offer to the Debtor to purchase the Property from the Trusts for $1.5 million. Rather than accepting this offer, the Creditors allege that on August 27, 2013, the Debtor entered into a scheme to sell the Property to her friend for a total of $500,000.00.

2

*See State Court Complaint* (Case No. 15-1720-BKC-PGH-A, ECF No. 1, Exhibit 1, ¶¶ 1–23).

On December 17, 2013, the Creditors filed a civil action against the Debtor in New York state court (the "State Court Action"), alleging that the Debtor breached her fiduciary duties as trustee of the Trusts. *See Adversary Complaint* ¶ 6 (Case No. 15-1720-BKC-PGH-A, ECF No. 1). On April 28, 2014, the Debtor filed her chapter 13 bankruptcy petition. The Debtor listed Ms. Catalanotti as holding a contingent, unliquidated, and disputed claim in the amount of $100,000.00 in Schedule F and listed the State Court Action as "Pending" in the Statement of Financial Affairs. On August 13, 2014, the Debtor filed her *Second Amended Chapter 13 Plan* (ECF No. 43). On August 28, 2014, the Court confirmed the Debtor's Second Amended Chapter 13 Plan (the "Confirmation Order") (ECF No. 46).

On May 22, 2014, with the State Court Action stayed by the Debtor's bankruptcy filing, the Creditors filed an *Amended Motion for Relief from the Automatic Stay or in the Alternative to Dismiss Case or Convert to Chapter 7 as Bad Faith Filing* (the "First Motion for Relief from Stay") (ECF No. 16). On July 21, 2014, the Court entered an *Agreed Order Granting in Part and Denying in Part Catalanotti's Amended Motion* (the "Agreed Order on the First Motion for Relief") (ECF No. 35), which required the Debtor to resign immediaitely as trustee for the Trusts. In addition, the Court allowed the Creditors to continue their litigation in the State Court Action with respect to causes of action that sought only *in rem* relief. *See* Agreed Order on the First Mot. for Relief.

3

On December 7, 2015, the Creditors instituted an adversary proceeding by filing a *Complaint for Mandatory Injunctive Relief, Accounting and For Modification of Order Granting Relief From Stay to Allow Pursuit of In Personam Claims and For Setting-Aside of Order Confirming Chapter 13 Plan* (the "Adversary Complaint") (Case No. 15-1720-BKC-PGH-A, ECF No. 1).

According to the Adversary Complaint, the Creditors discovered significant misstatements by the Debtor *after* the Court entered the Confirmation Order and the Agreed Order on the First Motion for Relief. First, the Creditors claim that the Debtor failed to disclose the existence of the Trusts' bank accounts for which she was the sole signatory, and failed to disclose certain checks that the Debtor wrote to herself from the Trusts' bank accounts. Specifically, the Creditors allege that the Debtor wrote two checks to herself from the Trusts' bank accounts in the amount of $55,000.00 on August 30, 2013, and $4,335.12 on January 17, 2014. The Debtor also allegedly failed to reveal that she paid $10,000.00 to her bankruptcy attorney and $22,305.00 to another attorney from the Trusts' bank accounts. Second, the Creditors allege that the Debtor failed to disclose that she was the trustee of a separate trust which adversely affected the Creditors. Third, according to the Adversary Complaint, the Debtor refuses to turnover a check in the amount of $29,877.11, which is payable to the Creditors. As a result of these alleged revelations and the Debtor's non-compliance with discovery requests, the Creditors allege that the Debtor filed her bankruptcy case in bad faith. *See* Adversary Compl., ¶¶ 1–29.

4

In sum, the Adversary Complaint seeks an accounting and turnover of all books, records, and documents in connection with the Trusts from the Debtor. In addition, the Adversary Complaint seeks to set aside the Court's Confirmation Order and seeks to amend the Agreed Order on the First Motion for Relief to allow *in personam* relief against the Debtor. *See* Adversary Compl., ¶¶ 30–48.

The discovery dispute at issue arose when the Creditors filed the *Notice of Rule 2004 Examination*, scheduling a Rule 2004 Examination of the Debtor. Particularly, the Creditors requested that the Debtor produce the following:

> Copies of all documents used in preparation of Debtor's Petition, Schedules and Statements in Case No. 14-19551-PGH. This includes but is not limited to copies of all pages of any questionnaire completed by or on behalf of the debtor and any work sheets or notes pertaining to any information contained in Debtor's Petition, Schedules, and Statements for each of the referenced cases.

In response, the Debtor filed the Motion for Protective Order. On December 18, 2015, over the Debtor's objection, the Court orally ruled that the Debtor must appear for a Rule 2004 Examination. The question of whether the Debtor must produce the client questionnaire, work sheets, or any other notes that were used to complete her bankruptcy petition and schedules[1] was not resolved.

## CONCLUSIONS OF LAW

Both the attorney-client privilege and the work-product doctrine are pillars of the federal system of discovery. The attorney-client privilege "serves the function of

---

[1] The bankruptcy schedules of a debtor include, but are not limited to, the following: a list of real and personal property, a list of assets that a debtor asserts are exempt, and not subject to claims of creditors, a list of liabilities both secured and unsecured, a list of executory contracts, an itemization of a debtor's income and expenses, a statement of financial affairs, which contains information concerning a debtor's income and transfers of property that a debtor has made in the two years prior to a debtor's bankruptcy.

promoting full and frank communications between attorneys and their clients." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985); *see also Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981). Meanwhile, the work-product doctrine is intended to "encourage careful and thorough preparation by counsel[.]" *Niagara Mohawk Power Corp. v. Megan–Racine Assoc.'s, Inc. (In re Megan–Racine Assoc.'s, Inc.)*, 189 B.R. 562, 574 (Bankr. N.D.N.Y. 1995).

In bankruptcy, however, a debtor has a continuous duty of disclosure. *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 208 (5th Cir. 1999), *cert. denied*, 528 U.S. 1117 (2000). One court has found that a debtor "coming before the bankruptcy court must come clean and make full disclosure of all information relevant to the administration of his or her case." *Morrissy v. Dereve (In re Dereve)*, 381 B.R. 309, 335 (Bankr. N.D. Fla. 2007). The Court agrees wholeheartedly with this proposition. Indeed, a debtor's failure to fully disclose his assets can result in grave penalties. For example, under 11 U.S.C. § 727, a debtor may lose his discharge, and under 18 U.S.C. § 152, a debtor may be subject to criminal penalties. However, this Court's inquiry in deciding the issues presented do not end here.

## I.    Attorney-Client Privilege

Federal law applies to the issue of determining the scope of the attorney-client privilege in bankruptcy proceedings. Federal Rule of Bankruptcy Procedure 9017 makes the Federal Rules of Evidence applicable to bankruptcy cases. Regarding a claim of privilege, Federal Rule of Evidence 501 provides that:

> The common law—as interpreted by United States Courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court.

Under the federal common law, the established purpose of the attorney-client privilege is to promote "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co.*, 449 U.S. at 389. This result is achieved by shielding "confidential communications between client and lawyer made for the purpose of securing legal advice[.]" *In re Grand Jury Proceedings 88-9 (MIA)*, 899 F.2d 1039, 1042 (11th Cir. 1990); *see also U.S. v. Aronson*, 610 F. Supp. 217, 221 (S.D. Fla. 1985). Without such protection, an attorney may not discover "all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." *Upjohn*, 449 U.S. at 389.

The Eleventh Circuit requires three essential elements to establish the existence of an attorney-client privilege.[2] First, it must be shown that an individual made a confidential communication to an attorney. Second, the communication must be made to an attorney in his professional capacity.[3] Third, the purpose of the

---

[2] The Court acknowledges that other federal courts sitting in the Eleventh Circuit apply a varying number of elements to determine the existence of the attorney-client privilege. *See, e.g.*, *Regions Bank v. Kaplan*, 12-cv-1837, 2015 WL 5687882, at *1 (M.D. Fla. September 25, 2015) (applying 4 elements); *Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC*, 12-cv-22539, 2014 WL 4449451, at *3–4 (S.D. Fla. September 10, 2014) (applying 8 elements). However, these various tests can be distilled to the same three elements.

[3] There is no dispute that the answers to the questionnaire at issue were communicated to the Debtor's attorney in his professional capacity.

communication must be to secure legal advice or assistance.[4] *See, e.g.*, *U.S. v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991); *In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223, 1224 (11th Cir. 1987). The burden of proving these elements rests with the party asserting the privilege. *See, e.g.*, *Jackson v. Gen. Electric Capital Corp. (In re Fundamental Long Term Care, Inc.)*, 509 B.R. 387, 395 (Bankr. M.D. Fla. 2014); *Bridgewater v. Carnival Corp.*, 286 F.R.D. 636, 638 (S.D. Fla. 2011).

Accordingly, the Debtor bears the burden when asserting that she is not obligated to produce her client questionnaire, work sheets, and any other notes relating to the preparation of her bankruptcy petition and schedules. *See U.S. v. Moazzeni*, 906 F. Supp. 2d 505, 514 (E.D. Va. 2012); *In re Myers*, 382 B.R. 304, 309 (Bankr. S.D. Miss. 2008) ("In the context of a bankruptcy, the attorney-client privilege is narrowed."); *see also In re Wilkerson*, 393 B.R. 734, 742–43 (Bankr. D. Colo. 2007); *In re Eddy*, 304 B.R. 591, 596 (Bankr. D. Mass. 2004). To satisfy this burden, the movant must demonstrate with *facts*—not mere assertions—that the attorney-client privilege exists. *In re French*, 162 B.R. 541, 546 (Bankr. D.S.D. 1994).

Here, the issues relate to the Debtor's communications with her bankruptcy attorney, concerning what would and would not be included in her bankruptcy schedules, which she asserts are confidential. To assert the existence of a

---

[4] Documents that are ordinarily protected by the attorney-client privilege may be discoverable if the crime-fraud exception or waiver is established. *See, e.g.*, *In re Campbell*, 248 B.R. 435, 439–41 (Bankr. M.D. Fla. 2000). Creditors have not argued either of these doctrines are applicable, and therefore, it is unnecessary for the Court to consider whether they apply.

confidential communication, the Eleventh Circuit requires that a "privilege holder must prove the communication was (1) intended to remain confidential and (2) under the circumstances was reasonably expected and understood to be confidential." *Bogle v. McClure*, 332 F.3d 1347, 1358 (11th Cir. 2003) (citation omitted). The United States District Court for the Northern District of Florida has also ruled that to "show confidentiality such that a communication is protected from discovery under attorney-client privilege, the movant must meet a subjective component and an objective component." *Pensacola Firefighters' Relief Pension Fund Bd. of Trustees v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 09-cv-53, 2011 WL 3512180, at *7 (N.D. Fla. July 7, 2011). This standard is similar to the test under the Fourth Amendment, requiring both an objective and subjective expectation of privacy. *Id.* (*citing In re Asia Global Crossing, Ltd.*, 322 B.R. 247, 255 (S.D.N.Y. 2005)); *see Katz v. U.S.*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring).

The Court finds that a debtor can maintain a reasonable expectation of privacy when disclosing financial information to an attorney concerning the contents of the Debtor's petition and schedules. Although the Debtor's "responses elicited from [a client] questionnaire [could have been] used to prepare the schedules, all of the information contained therein may or may not ultimately be disclosed publicly in such schedules." *In re Stoutamire*, 201 B.R. 592, 596 (Bankr. S.D. Ga. 1996). As such, a client that details factual information in a client questionnaire for her attorney is possibly relying on his or her legal advice and should not be required to reveal these details. *Id.* To the extent that other courts,

including the Seventh Circuit in *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991), have applied a bright-line rule that the attorney-client privilege does not apply to information that is "disclosed for the purpose of assembly into a bankruptcy petition and supporting schedules," this Court disagrees with those rulings.[5]

In addition, when debtors provide financial information in a client questionnaire, attorneys must "reflect upon and analyze information given to them *by their debtor-clients* in order to provide counsel to them as to how to properly respond to various questions in the Schedules and the SOFA." *In re McDowell*, 483 B.R. 471, 477–78 (Bankr. S.D. Tex. 2012). To hold otherwise would equate an attorney with a bankruptcy petition preparer whose primary responsibility is to transcribe a debtor's financial information onto the Debtor's bankruptcy petition and schedules. However, unlike a petition preparer, a bankruptcy attorney provides a debtor with expertise and advice on bankruptcy law to provide *legal* advice. As the United States Bankruptcy Court for the Southern District of Texas noted, a bankruptcy attorney may explain "how to maximize exemptions under applicable law or by reviewing the definition of 'value.'" *See Id.* at 487–88.

Furthermore, the Court finds that requiring a bankruptcy attorney to *per se* turn over *any and all* client questionnaires, work sheets, and notes that were

---

[5] *See In re Tarkington*, 10-cv-00012-8, 2010 WL 1416813, at *3 (Bankr. E.D.N.C. Apr. 2, 2010) ("Attorney-client privilege does not extend to information disclosed during the preparation of a bankruptcy petition or schedules."); *U.S. v. Naegele*, 468 F. Supp. 2d. 165, 171 (D.D.C. 2007) (draft bankruptcy filings are non-privileged); *In re Wilkerson*, 393 B.R. at 743 (completed questionnaire prior to bankruptcy filing is non-privileged); *In re Eddy*, 304 B.R. at 596 ("A debtor has no reasonable expectation that information will be kept confidential if it must be disclosed in bankruptcy filings.").

created for preparation of the Debtor's bankruptcy petition and schedules is contrary to the purpose of the attorney-client privilege, which is to promote meaningful communications between a client and her attorney. For example, with respect to turning over draft documents, including draft interrogatories and draft affidavits, courts have held that such documents are not discoverable unless the contents of the draft documents have been already disclosed to third parties. *See, e.g.*, *Ideal Elec. Co. v. Flowserve Corp.*, 230 F.R.D. 603, 610 (D. Nev. 2005). One court has specifically stated that draft documents reveal an "attorney's and client's mental impressions, strategies, and [solicitations for] legal advice." *Long v. Anderson Univ.*, 204 F.R.D. 129, 134–35 (S.D. Ind. 2001). In the same vein, it would be improper to *per se* permit a party to obtain a debtor's draft answers to her schedules that were prepared in anticipation of filing for bankruptcy.

The circumstances creating an attorney-client privilege must be addressed on a case-by-case basis. *See Upjohn*, 449 U.S. at 396; *Int'l Horizons, Inc. v. The Comm. of Unsecured Creditors (In re Int'l Horizons, Inc.)*, 16 B.R. 484, 488 (N.D. Ga. 1981) ("In developing the federal law of privilege, courts are not governed by per se rules, but must determine whether privileges will be recognized on a case by case basis."); *see also U.S. v. White*, 950 F.2d at 430 ("The claim of privilege cannot be a blanket claim; it must be made and sustained on a  question-by-question or document-by-document basis.") (quotations omitted). In utilizing a client questionnaire to fill out bankruptcy schedules, legal advice may be exercised by the Debtor's attorney, and therefore, the purpose of the communication may have been to secure legal advice.

Accordingly, the Debtor must provide the Court with factual evidence demonstrating that the Debtor possessed a subjective and objective expectation of privacy when she answered questions on a client questionnaire which were provided to her attorney for the purpose of obtaining legal advice. Unless the Debtor presents such evidence, the Court cannot find that the Debtor has met her burden of proving the existence of an attorney-client privilege.

While the Debtor's communications with her attorney may be privileged, the Debtor must prove each element to receive the protection of the attorney-client privilege. Since the Debtor has not done so, the Debtor's Motion for Protective Order is denied without prejudice to the Debtor factually proving the existence of the attorney-client privilege to the client questionnaire.

## II.   Work-Product Doctrine

The work-product doctrine generally protects items such as "interviews, statements, memoranda, correspondence, briefs, mental impressions, [and] personal beliefs" from discovery. *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). Unlike the attorney-client privilege, which aims to protect communications between  clients and their attorneys, the work-product doctrine is intended to protect the adversarial system itself. *ACLU v. U.S. Dep't of Justice*, 90 F. Supp. 3d 201, 213 (S.D.N.Y. 2015). By doing so, the work-product doctrine "maintains legal professionalism by precluding attorneys from capitalizing on an adversary's work efforts." *Morisky v. Pub. Service and Gas Co.*, 191 F.R.D. 419, 424 (D.N.J. 2000).

The roots of the work-product doctrine can be traced back to the Supreme Court's opinion in *Hickman v. Taylor*, 329 U.S. 495 (1947). In *Hickman*, the Supreme Court reasoned that attorneys must be allowed to "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Id.* at 510. If an attorney's work-product were "routinely available to adversaries[, it] could harm the adversary system by allowing attorneys' work efforts to be used against their clients, thereby demoralizing the attorneys, or causing them not to develop documents." *In re ANR Transp. Co., Inc.*, 302 B.R. 607, 616 (E.D. Wis. 2003).

The work-product doctrine is codified under Rule 26(b)(3) of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7026. Rule 26(b)(3), in relevant part, states:

> (A) *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> > (1) They are otherwise discoverable under Rule 26(b)(1); and
> >
> > (2) The party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) *Protection Against Disclosure.* If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Essentially, under Rule 26(b)(3), the work-product doctrine shields: (1) any document or tangible thing, (2) prepared in anticipation of litigation, (3) that was created by or for a party, or for his representatives. *See Bridgewater v. Carnival Corp.*, 286 F.R.D. 636, 639 (S.D. Fla. 2011); *Adams v. City of Montgomery*, 282 F.R.D. 627, 633 (M.D. Ala. 2012). A party that is "withholding discovery to show that the documents are protected by the work-product privilege" bears a heavy burden of proof. *See, e.g., Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, 12-cv-81397, 2015 WL 1860826, at *4 (S.D. Fla. Apr. 22, 2015); *L-3 Comm's Corp. v. Spartan Corp.*, 13-cv-1481, 2014 WL 2882925, at *2 (M.D. Fla. June 25, 2014).

Courts have recognized two different types of protected work-product under Rule 26(b)(3)—fact work-product, "which protects information gathered in anticipation of litigation," and opinion work-product, "which consists of the attorney's mental impressions, opinions, or legal theories." *Bridgewater*, 286 F.R.D. at 639. Fact work-product is discoverable "only upon a showing that the party seeking discovery has substantial need of the materials in preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *Id* (citation omitted). Whereas, opinion work-product "enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances. *Id.* at 640 (citation omitted); *see also U.S. v. Pepper's Steel & Alloys, Inc.*, 132 F.R.D. 695, 698 (S.D. Fla. 1990).

At the December 18, 2015 hearing, the Creditors made clear that they do not seek opinion work product from the Debtor. The Creditors only seek information

that the Debtor herself answered on her client questionnaire. *See* Tr. of Hr'g 40:21-24 (ECF No. 116). Therefore, the Court will only address the applicable standards under the fact work-product doctrine.

Having received no evidence, the Court holds that any client questionnaire, work sheets, or any other notes that were created for preparation of the Debtor's bankruptcy petition and schedules are not protected from discovery under the work-product doctrine. Specifically, the Court finds that the Debtor's answers on the client questionnaire do not represent the attorney's work-product. The only attorney work-product on the client questionnaire is presumably the questions that the attorney drafted for the Debtor to answer. The Debtor's answers are factual statements and do not constitute her counsel's work. *See Morisky*, 191 F.R.D. at 425 (finding that completed questionnaires in a class action lawsuit were "simply fact statements"). For these reasons, Debtor's objection to producing the client questionnaire, work sheets, or any other notes based on the work-product doctrine is overruled.

An order consistent with these findings and conclusions will be entered on the docket contemporaneously with the entry of this Memorandum Opinion.